Iftikhar A. SIDDIQUI, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE and John Ashcroft,
Attorney General of the United States,
Respondents.

No. 01–2043.

United States Court of Appeals,
Seventh Circuit.

Submitted May 1, 2001.

Decided March 26, 2002.

Before FAIRCHILD, EASTERBROOK, and MANION, Circuit Judges.

## ORDER

On July 28, 2000, Iftikhar Siddiqui, a 39–year–old native and citizen of Pakistan, who has resided illegally in the United States since approximately 1987, filed a motion before the Board of Immigration Appeals ("BIA") to reopen his case, seeking relief under three sources: asylum under 8 U.S.C. § 1158(a), withholding of deportation under 8 U.S.C. § 1253(h), and for deferral of deportation under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"), as implemented by the Immigration and Naturalization Service in 8 C.F.R. § 208.16(c).[1] Siddiqui argued that the conditions in Pakistan had changed and that he feared persecution or torture under its new military government (based on his religion and political views), and that his failure to apply for asylum in 1993 was due to the misconduct of his former attorney. The INS opposed his motion.

The BIA denied Siddiqui's motion on March 29, 2001, without reaching the merits of any of his claims. The Board concluded that the motion under the CAT was untimely, and that the motions seeking asylum and to withhold deportation were not excepted from the regulatory time limits because Siddiqui had not shown that the conditions in Pakistan were previously unavailable or undiscoverable. Further, the BIA found his ineffective assistance of counsel argument unpersuasive, noting that when Siddiqui was represented by a second attorney in 1994, he still did not apply for asylum. Siddiqui appeals.[2]

We review the BIA's decision about whether to reopen a case for an abuse of discretion. *See INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). "Motions for reopening of deportation proceedings are disfavored for the same reasons as are petitions for rehearing, and motions for a new trial on the basis of newly discovered evidence." *Id.* Moreover, "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Id.*

Generally, a motion to reopen must be filed within 90 days of the final administrative decision. 8 C.F.R. § 3.2(c)(2). Here, the BIA's final decision was April 21, 2000, and therefore Siddiqui's motion to reopen should have been filed by July 20, 2000. Since he filed his motion on July 28, 2000, the BIA concluded that his entire motion was untimely. Motions to reopen for asy-

---

**1.** On February 4, 1993, the INS issued an Order to Show Cause and Notice of Hearing charging that Siddiqui be deported for having entered the U.S. without inspection. *See* 8 U.S.C. § 1251(a)(1)(B). On March 30, 1993, the INS judge ordered Siddiqui deported and, on April 21, 2000, the BIA affirmed that decision. Siddiqui did not seek asylum at that time, but rather claimed that the deportation charge should be stayed under *Catholic Soc. Servs., Inc. v. Meese*, 685 F.Supp. 1149 (E.D.Cal.1988). Siddiqui's argument was ultimately unsuccessful. *See Siddiqui v. INS*, 2001 WL 599694, 16 Fed.Appx. 454 (7th Cir. May 30, 2001) (unpub. order), *reh'g denied*, (July 25, 2001).

**2.** Siddiqui does not raise the ineffective assistance of counsel issue on appeal and therefore we need not address the BIA's conclusion that he failed to establish the prima facie case set forth in *Matter of Lozada*, 19 I & N Dec. 637(BIA), 1988 WL 235454, *aff'd* 857 F.2d 10 (1st Cir.1988).

lum or to withhold deportation are not subject to the 90–day time restriction if based on "changed circumstances arising in the country of nationality ..., if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 3.2(c)(3)(ii). The BIA concluded that Siddiqui had not established such changed circumstances, and therefore did not except his motions for asylum and withholding of deportation from the 90–day time limit.

■ Siddiqui argues that the BIA made several errors in reaching its decision not to reopen his case. First, he argues that the Board erred in using April 21, 2000, the date the BIA had denied his appeal of the order of deportation and the last date Siddiqui's case was before the Board, as the date of the "previous hearing," thereby ignoring evidence of changed circumstances in Pakistan from 1993 to 2000. Siddiqui argues that, instead of April 21, 2000, the BIA should have looked at changed circumstances since March 30, 1993, the date that the Immigration Judge first ordered him deported. [Blue 18] However, Siddiqui's own motion to reopen before the BIA contended that conditions had changed since the Board issued its decision on February 14, 2000.[3] Additionally, while his case was still pending before the BIA, Siddiqui could have filed a motion to reopen the Immigration Judge's decision, effectively remanding the case for further proceedings before the Immigration Judge. *See* 8 C.F.R. § 3.2(c)(4). Consequently, we conclude that the BIA did not abuse its discretion in using April 2000 as the date of Siddiqui's "previous hearing" under 8 C.F.R. § 3.2(c)(3)(ii).

■ Next, Siddiqui argues that the BIA ignored his evidence of changed circumstances from June and July 2000. As noted, the BIA concluded that most of the evidence relied upon by Siddiqui existed *before* April, 2000. Indeed, most of the evidence referred to on appeal, including his own experience with brutal treatment in Pakistan, occurred before April 2000 and relates to conditions that have existed for decades. Siddiqui certainly could have raised these issues, whether in 1993 before the Immigration Judge or before April 2000, when his case was ultimately resolved by the BIA. While the BIA did not specifically mention Siddiqui's references to events in June or July 2000, it did state that "the documentary evidence submitted by the respondent does not show that conditions have changed for Ahmadis and members of the MQM political organization since April 2000." [BIA op. pg. 3] Upon review of the record, we agree and conclude that the evidence Siddiqui relies on is general in nature and does not establish that circumstances had changed in Pakistan for members of his religious sect (Ahmadis) or his political group (MQM), or that Siddiqui likely faced persecution upon his return to that country. Therefore, we conclude that the BIA did not abuse its discretion in denying Siddiqui's motion to reopen based on changed circumstances.

Siddiqui also contends that the BIA erred in noting that he was a member of MQM (a political organization) when he lived in Pakistan because he did not become a member of that group until he moved to the United States. Again, the BIA did not abuse its discretion in this regard. The BIA noted that Siddiqui was beaten in 1980 while a member of the *banned* MQM organization. Siddiqui claims that he was not a member of MQM

---

**3.** The Board issued its original decision on February 14th, but issued an amended order on April 21, 2000 noting that Siddiqui should be deported to Pakistan, not Mexico.

while in Pakistan, but instead was a member of a group that was supported by MQM. [Blue 35] For purposes of the motion to reopen, there is no meaningful distinction.

■ Finally, Siddiqui argues that the BIA never addressed his CAT claim. However, a review of the Board's decision indicates that it did consider his argument, and, after finding that it was time-barred, did not reach the merits. *See* 8 C.F.R. 3.2(c)(2) (setting 90–day time limit for motions to reopen). On appeal, the INS argues that there is no provision to waive the time limit for CAT claims. [INS 13–15] The plain language of the relevant regulation indicates that the INS' position on this issue is correct. Paragraph 3.2(c)(2) provides that "[e]xcept as provided in paragraph (c)(3) of this section, . . . that motion [to reopen] must be filed no later than 90 days after the date on which the final administrative decision was rendered. . . ." Paragraph (c)(3)(ii) provides that the "time and numerical limitations set forth in paragraph (c)(2) of this section shall not apply" to motions to reopen based on asylum or withholding of deportation. *See also* 8 C.F.R. § 208.18(b)(2) (excepting motions to reopen to seek CAT protection from time limits where removal became final before March 22, 1999). However, even if the 90–day time limit is not absolute for CAT claims, the standard for waiving the time limit would be the same standard applied to Siddiqui's claims for asylum and withholding of deportation (i.e., he must have established changed circumstances arising in his country, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing). 8 C.F.R. § 3.2(c)(3)(ii). Since we have concluded that the BIA did not abuse its discretion in denying his motion to reopen based asylum or with-

holding of deportation, this analysis applies equally to his CAT claim.

For the reasons stated herein, we affirm the decision of the BIA.